Good morning. Our first case this morning is 06-1262 Nystrom v. Trex Company. Mr. Presta. May it please the court, my name is Joseph Presta. I represent Ron Nystrom in this matter. I'd like to reserve five minutes for rebuttal, please. There are both legal and equitable reasons that we believe Mr. Nystrom should have been entitled to proceed on his doctrine of equivalence case upon remand from this court. I would like to just briefly talk about the equitable reasons first. The actions that Mr. Nystrom took in the district court and in bringing his first appeal were all based on the current state of federal circuit law at that time. Mr. Nystrom actually prevailed initially under the current state of federal circuit law as indicated in this court's June 28, 2004 initial opinion. It was all of the claim construction issues were ruled in Nystrom's favor and the validity of Mr. Nystrom's patent was reinstated. So the initial opinion, there was finding of no waiver of any of Mr. Nystrom's infringement claims under the current state of federal circuit law at that time. However, before the mandate issued in that case, as this panel is well aware, this court took up the en banc review of the Phillips matter. Ultimately, this case was held for about a year and a half while that Phillips decision was made. Ultimately, the Phillips decision dramatically reduced the literal scope of Mr. Nystrom's patent. Under the initial decision of this court and the precedent that Mr. Nystrom was relying on in bringing his appeal, his original patent covered any type of board made by any type of manufacturing technique. However, after Phillips, this court's ultimate decision in this case indicated that Mr. Nystrom's patent was limited to wood boards cut from a log using woodworking techniques. So there was a dramatic shrinking of the literal scope of Mr. Nystrom's patent by operation of the Phillips decision, which Mr. Nystrom had no notice of whatsoever when taking the actions in the district court or in bringing his appeal to this court. The en banc review was not indicated as being taken yet by this court when he filed his briefs in this appeal. He had no way of knowing that there would be such a sea change in the claim construction methodology as set forth in Phillips. We were overstated. Phillips didn't do anything new. It just restated everything that had gone before. There's nothing new in there. With all due respect, Your Honor, if we compare what it did to Mr. Nystrom's patent, the original panel of this court, the majority panel, ruled that Mr. Nystrom's patent was not limited to wood cut from a log or any type of manufacturing techniques. However, this court took up a reconsideration of Mr. Nystrom's appeal solely based on Phillips. That's what the order says. After that order, and Phillips was reheard by this panel, without any new briefing or any opportunity for Mr. Nystrom to consider Phillips, it changed the claim construction dramatically. So whether it was the comparison of the first decision and the second decision certainly indicates that Phillips was a dramatic change with respect to the literal scope of Mr. Nystrom's patent. Mr. Prester, was the first appeal in your brief, was there any allegations of DOE at that point? Your Honor, in the first appeal, we raised the prosecution history issue that barred Mr. Nystrom from proceeding on the Doctrine of Equivalence. We never were able to reach the Doctrine of Equivalence below as a result of the devastating view that the district court had with respect to the prosecution history and the specification. Well, that's your conclusion, but there is no determination by the district court, if I recall the record correctly, where the district court precluded or foreclosed your resort to the Doctrine of Equivalence. There was no express finding of that, Your Honor. And your motion for summary judgment of non-infringement was not specific to Doctrine of Equivalence or literal infringement. It simply asserted that there was no infringement, period, which would encompass both literal and Doctrine of Equivalence infringement. That's correct, Your Honor. However, what's important to note is that during the claim construction process, the district court not only made literal claim construction rulings, but he also interpreted his view of the prosecution history. And in particular, he found in his claim construction order, which is on page 829 of the appendix, that by adding the language manufactured to have, the plaintiff was clearly addressing wood boards. As such, the district court says, the manufacturing process intended by the plaintiff was a woodworking technique. We understand what it takes to win a case under the Doctrine of Equivalence, and faced with that type of a prosecution history ruling, we found that there was no reasonable basis to proceed under the Doctrine of Equivalence. What happened during the literal claim construction phase, the rulings by the district court amounted to an estoppel that we knew, because the same standard applies for prosecution disclaimer in the context of claim construction, as prosecution history estoppel in the context of Doctrine of Equivalence. But the district court disagrees with your characterization of its ruling on claim construction, and says in its opinion, the prosecution history merely established that plaintiff's claims always intended to cover only wood boards. There was no, according to the district court, that was simply further support for its conclusion at the time as to the construction of the word board. I understand, Your Honor, and it's correct when the district court went back to look at, and he made his own interpretation of what those previous statements meant. But I think the real test is what were we facing at the time of Trex's motion for summary judgment? What rulings were in front of us at that time? The rulings that were in front of us were the district court telling us that we added manufactured to have, for the specific reason of limiting our claims to only wood boards. That's what the original decision we were faced with, which we considered to be an adverse ruling that would prevent any type of a voluntary waiver of Doctrine of Equivalence. I understand the district court tried to explain that away later, but at the time when the alleged waiver happened, we were facing a prosecution history ruling that, in our view, establishes a bar to be able to proceed on the Doctrine of Equivalence. And in fact, more specifically, the district court erred in determining what the scope of the surrender territory was. He said that we surrendered anything but wood boards, when in reality, that prosecution history, we were only surrendering non-manufactured curves. Once you make a fundamental mistake in the scope of the surrender of the territory by the amendment, it's our position that you can't proceed on a Doctrine of Equivalence case to see if it's rebuttable. And in particular, there was no way to rebut it, because the district court had the product, it was a non-wood product, and interpreted the claim specifically as excluding that non-wood product. Therefore, under the rebuttable presumptions test under FESTO, there was no way we could possibly get back the thing that the district court expressly said we gave up with respect to that amendment. It was a fundamental mistake as to the purpose and effect of the amendment. But Mr. Prester, is it really the basic issue as to whether or not you appealed the DOE in the first place, in the first appeal? There was no mention of DOE in the first appeal. Your Honor, there is no specific mention of DOE, but there's an entire section on page 36 of our appeal brief where we talked about this prosecution history problem that the district court raised that we consider to be a bar. But only with respect to the scope of the claim construction, not with respect to Doctrine of Equivalence. That's correct, Your Honor. However, it's the same issue. The same standard applies under this court's law. And in addition... What is that standard? What case are you referring to specifically? I'm talking about Omega Engineering that's cited in our brief where it talks about the same standard applies when you're looking during the literal construction phase whether there's prosecution disclaimer in the context of claim construction. It's the same standard that applies to see if you have prosecution history estoppel in the context of Doctrine of Equivalence. That's the same standard that I'm referring to. And because as a patent attorney we know that that same standard exists, when we were faced with the literal construction that included the basis was prosecution history reasons, we realized we could not proceed on our Doctrine of Equivalence case. Therefore, it's our position that that constituted an adverse ruling that prevented us from going forward. But I also want to point out, I don't want to forget about the equitable reasons that we're talking about as well. The fact that we had already fully briefed, our first brief was filed under the current Federal Circuit law at that time. We were correct. This court issued a decision by a majority panel that was going to send us back for both literal and Doctrine of Equivalence. There was no waiver under the current law as we currently briefed it. However, after Phillips occurred, and Phillips certainly did overrule certain aspects of prior precedent, which resulted in a dramatic shrinking of Mr. Nystrom's literal scope of his patent that we could not have anticipated. Would we have done things differently if we had known that Phillips was in existence and that Mr. Nystrom's context test of Phillips was going to take Mr. Nystrom's patent and shrink it down so dramatically? Would we have done something different? Very possible. Do you want to save your rebuttal or do you want to continue on? I'll reserve the rest for my rebuttal. Thank you very much. Mr. Coyne. Thank you, Your Honor. Circuit Judges, good morning. I'd like to make only three points this morning. First, the District Court's decision on waiver is unassailable. Secondly, Nystrom's arguments are frivolous, particularly on this issue that the court's affirmance, this court's affirmance of the District Court's decision, did not correct or somehow modify or vacate the District Court's construction of board and manufactured to have. It affirmed them. Third, Nystrom is, as we've just heard, re-arguing an issue that was decided in this appeal last time, namely the construction of manufactured to have. The first argument Nystrom makes is that the standard of review is somehow de novo at this point. We're dealing with an inherently factual issue, waiver. The standard of review is abuse of discretion, which even casts a harsher light on this appeal. The facts of that waiver are clear and they are uncontested. Nystrom pled equivalence, but he never argued it. Mr. Coyne, with respect to the waiver section, is that controlled by Federal Circuit law or by Regional Circuit law? Your Honor, in this case, I believe it's controlled by Federal Circuit law. Why? Looking at Sulzer, for example, a similar situation occurred where there was an Illuminate motion, and the court appeared to apply Federal Circuit law in that case. There was also an alleged change in the law. The court said it's the law at the time of the decision. This court never issued a mandate over the first panel decision. The mandate was issued on the 2005 decision. I understand that, but with respect to the waiver provision, it's a waiver of a claim. Yes, Your Honor. How does it pertain to patent law? How does it arise under the patent laws? Your Honor, I'm reading into Sulzer. There's not an explicit statement that it's Federal Circuit law. I don't think the issue is any different either way. If we look at, for example, Omni Outdoor, which is a Fourth Circuit case, it applies the same type of standard, whether it was voluntary or whether it was required by a judgment by the court. There was no judgment here. Mr. Nystrom surely had an indication of what the judge was thinking, but as we see in Sulzer, having an idea or an indication of where the judge is going on an issue is not the type of judgment that converts a voluntary waiver into an involuntary one. He had an opportunity for a judgment. But does the waiver arise under the patent laws? The waiver itself, Your Honor, I believe does not arise under the patent laws. I think that the standard, however, that is being applied by the regional circuits on this issue appears to me to be the same as the standard that's being applied by the Federal Circuit looking at Omni, a Fourth Circuit case. Do we need to take a look at the Fourth Circuit then? I'm sorry, Your Honor? Should we look at the Fourth Circuit? I think if we don't look at our own law on that issue, we should look at the Fourth Circuit, and I believe the standard is the same whether it is voluntary or whether there is a prior judgment that required that outcome. There was no judgment. The judgment in this case was when the claim construction issue is not self-affecting. It is an interlocutory order, and what becomes the judgment is when the parties moved for summary judgment. Nystrom himself moved. But what's particularly critical is that Trex also moved, and at that time Nystrom had an opportunity to raise this issue. In fact, under this Court's law and under the Fourth Circuit law, he had an obligation to raise it. He didn't. What he did instead is he conceded defeat. He said he can't make a prima facie case of infringement, any kind of infringement, and that's where the waiver comes in. That was the point at which he waived the argument. The district court entered a final judgment reserving certain issues. This court sent it back for entry of a final judgment, and at that point when it came back in the first appeal, every issue in this case was resolved. Mr. Preston just said it himself that if he had gone back after the first case, he could have argued both equivalence and literal infringement. Those issues are both part of the issue of infringement. This issue has been decided, and he can't have a mulligan at this point simply because he is dissatisfied with the Court's modification of its first decision based on Phillips. The waiver is the only conclusion that can be supported by the facts that we just talked about. Mr. Nystrom's arguments that the waiver was involuntary, with all due respect, Your Honors, are specious. He argues that it's the same issue on equivalence that the district court decided on the claim construction issue. This happens very frequently. Issues overlap. But as I said before, it's not the same issue. It was a motion for construction of the claims. The issue was claim construction, not summary judgment at that instant. Subsequently, it was summary judgment, and under Rule 56, regardless of what he did on his own motion, he had an affirmative duty to come forward with this argument in response to Trex's motion. He didn't. What he said is that he was unable to make a prima facie case. This Court has now affirmed the construction of board and manufactured to have the very same reasons that Nystrom conceded to the district court he could not make a prima facie case. Trex submits to the Court that for the very same reasons that Nystrom could not make a prima facie case previously, he cannot make a prima facie case today. Mr. Presta argues that because our opinion did not specifically discuss the prosecution history, and because the claim construction was reviewed de novo, that that means somehow that that wipes the slate clean with respect to whatever effect prosecution history might have, and gives him a new argument on doctrine of equivalence. What's your response to that? Well, I have three responses, Your Honor. First off, this Court affirmed the meaning of board as well. It's all the same reasoning going through that prosecution history, why the board was limited to a wood board, and why the techniques for machining that board are limited to woodworking techniques. There is no logical slippage. But the worst issue that this raises is what does this leave as a precedent for the appellate system? Let me give you two examples. Let's say there's a per curiam affirmance where the district court's reasoning is impeccable, and the court decides for reasons of efficiency, the court's docket, to issue a per curiam affirmance. Are we now to believe that every word the district judge uttered in a 30- or 40-page decision is somehow wiped out or vacated because this court did not repeat the same language? It may not be our precedent, but what you're saying is that's not the point. That doesn't mean that it's irrelevant to the case. Absolutely, Your Honor. It may not be this court's precedent, but this court has affirmed the judgment and the conclusion that the district court made. Surely if there is a difference of view between what this court did and the district court did, this court's view is control. But this court didn't criticize the district judge on this issue. It didn't correct or modify it. It went through his analysis under Phillips and affirmed him. There's nothing in this opinion that gives any inkling that this court disagreed with the district court's conclusions on those two issues of law, board and manufacturer, to have. The second point that I'd like to make is that Nystrom's arguments are specious. The argument that this court's affirmance, as we've just been talking about, corrects a district court's decision is highly problematic. It would impose an unreasonable burden on the appeals courts to rearticulate everything that came out of the district court's lips on a decision that it's reviewing or be faced with an argument that it has somehow modified or corrected. It would open the floodgates, potentially, to all kinds of frivolous appeals when there is no difference in substance between what this court has done and what the district court has done. It's not healthy for the system. Nystrom also concedes that he can't win unless this court, and this is particularly telling, unless this court also, quote, corrects its ruling on manufacture to have. That, I think, is the most telling aspect of the arguments in this case. This court's already ruled on manufacture to have. This court's issued its mandate on that issue. The issue is over. Mr. Nystrom sought rehearing from the court. It was denied. He filed a petition for a writ of certiorari to the Supreme Court. It was denied. The issue is over. It's been concluded. It was decided, and the fat lady has sung proverbially, that Mr. Nystrom stands here with his hands over his ears, refusing to listen, does not give him a justification for filing what we believe is a frivolous appeal. Your Honor, if it's not, we have filed the requisite motion for sanctions in this case. We realize this is a hard issue to bring to the court, but we feel that it is merited. The court has warned the bar for 24 years not to bring specious appeals of this type. We had discussions with Mr. Nystrom's counsel. We went back down to the district court on remand not to pursue this line of argument, and nonetheless, Nystrom persists. Your Honor, that leaves us with, if not this case, where these arguments are so profoundly weak and inconsistent with this court's own ruling, then when? If the court has any other questions, I'd be happy to address them. Otherwise, I'll give up the rest of my time. Thank you. Thank you. Mr. Kresta. Thank you, Your Honor. First, with respect to the standard of review, I do believe it's federal circuit law. In this particular case, it comes down to an error of patent law, of whether this same standard applies issue that we were just talking about, whether the district court properly understood that there was a bar to proceeding under the doctrine of equivalence. So I believe that the standard of review is an abuse of discretion, but it's based on an error of patent law, which I believe this court reviews de novo. But, Mr. Kresta, it's still a question of waiver of the claim, as to whether or not the claim itself has been waived. And the waiver should be considered under regional law, under federal circuit law. It does not arise under the patent laws, and it should be considered under regional law. I believe this particular waiver issue does arise under the patent laws, because we're saying that it was an involuntary waiver as a result of an adverse ruling. Not an adverse judgment, as characterized by Mr. Coyne. That's not what the law says. An adverse ruling is all we needed. Because it was an adverse ruling that related to patent law, I believe that it's properly heard by this court under de novo standards. I'd also like to comment on, this is not a precedent problem. This court is not going to be overwhelmed with cases like this. This is an extremely unique case, in the timing of the fact that we got caught up with the Phillips en banc review, and that all of the briefing and all of the actions were taken under the pre-Phillips law. We've also never said that we can't win on manufactured to have. We respectfully ask this court just to take a look at that issue, if you believe that we didn't waive the claim and we were entitled to go back. And we do believe we could prove our case under the current manufactured to have. However, we don't know that there was a full claim construction analysis done on that term, to justify the current claim construction. Again, the fact that we operated under pre-Phillips law on all of our briefs and all of our actions, I respectfully ask this court to take into account on determining the waiver issue. We weren't given an opportunity to re-brief under Phillips. If this court had given us an opportunity, there was a year and a half period when our initial decision came out, to the time when Phillips was decided. We would have certainly been happy to re-brief and re-argue under Phillips. And not giving that opportunity, I believe, raises some fundamental fairness questions about, and due process questions even, of whether Mr. Nystrom should have been given an opportunity to make decisions under the current law. Amazing how much time went by from his decision of actions in the district court. There were three years of developing law culminating in Phillips, from the time that he took the actions in the district court. And it was a year and a half later that Phillips was decided by this court, after our briefs were set in stone. This court took up a reconsideration solely based on Phillips. It's very clear that Phillips had a dramatic impact on Mr. Nystrom's patent. There's no question the majority panel of this court... You're repeating yourself now for the third time. Do you have anything new to say? Yes, Your Honor. The mandate, the argument, Trex has argued that the mandate does not preclude, precludes any further action in district court. However, the case of Exxon, as cited in our brief, indicates that a mandate only covers that which was actually decided. The doctrine of equivalence was never actually reached in this court. Trex never asked to have a ruling that it was waived in the first appeal. The mandate did not say the doctrine of equivalence was waived. The case was remanded for further proceedings. We know, or at least it was our interpretation, that that couldn't have been for validity reasons. Because the judgment said that Trex agreed to waive the validity case unless it was remanded for further infringement findings. So our only reasonable interpretation of why the case was remanded, and Trex claimed that their infringement, their invalidity case was back alive, was because this court remanded it, and the only thing left was the doctrine of equivalence. There was no finding in the mandate that there was a waiver of doctrine of equivalence. And I think the other important thing in the appeal brief, we brought up the same concept at minimum. It's the same exact concept we brought up was the prosecution history rulings. And this court's decision in Harris v. Erickson talks about when you at least bring up the same concept in an appeal, you don't waive it. We brought up the prosecution history. I don't think that that's what Erickson says. Yes, Your Honor. Erickson says the argument was changed. So if you maintain the same argument, it was not a waiver of a claim argument in Erickson. It was a change of argument. So how can you rely on Erickson for that? Well, Your Honor, we actually raised the same argument. We raised that the prosecution history that the district court made, the prosecution history rulings, were wrong. We actually raised that in our brief. That's the only extent to which it came up at the district court. We never were able to get to doctrine of equivalence because during the literal construction phase, these devastating prosecution history rulings were made that prevented Mr. Erickson. You're re-arguing. Are you done answering the question about the case? Yes, I'm done answering your question, and I see that my time's up. Thank you very much. Thank you. Case is submitted.